RECEIVED
MAY 1 5 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAY 1 5 2008

FILED
JUNE 10, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WANDA TORRENCE, <br><br> Plaintiff, <br><br> vs. <br><br> ADVANCED HOME CARE, ARAM APPAVU, ~~SUE APPAVU~~, <br><br> Defendants. | 08CV 2821 <br> JUDGE DOW <br> MAGISTRATE JUDGE COLE <br><br> JURY DEMANDED |

## COMPLAINT AT LAW

Plaintiff, Wanda Torrence ("Ms. Torrence"), representing herself "pro se" in this matter, for her Complaint at Law against Defendant Advanced Home Care, states as follows:

### Nature of the Action

1. After advertising that it was offering medical/healthcare services in regards to general healthcare and going to the home of Ms. Torrence to provide said healthcare services, Advanced Home Care's Representative, Aram Appavu, took Ms. Torrence's blood pressure, after about an hour-long healthcare meeting, and proceeded in calling Ms. Torrence via telephone, sexually harassing her, just hours after the meeting ended - calls which were unwarranted, unprovoked, and that occurred over the course of 3 weeks. And because Ms. Torrence reported the sexual misconduct of Aram Appavu, Advanced Home Care ceased providing healthcare services to Ms. Torrence, an American with Disabilities - a service she so badly needed, was entitled to, and should have been allowed to participate in. Advanced Home Care, in failing to provide proper and adequate healthcare to Ms. Torrence and by ceasing the healthcare services previously offered to Ms. Torrence (on a monthly basis), Advanced Home Care violated Ms. Torrence's rights in regards to The Americans With Disability Act of 1990 - Public Health and Welfare. 42 U.S.C., 126, §12181, 12182 - Equal Opportunities for People with Disabilities. Ms. Torrence was intimidated, humiliated, terrified, discriminated against, deprived and emotionally distressed when Advanced Home Care used its role as a medical provider to approach her sexually, when her initial contact with Advanced Home Care was for medical purposes; and was to be used for medical purposes only.

2. On or about February, 2008, Ms. Torrence contacted Advanced Home Care to obtain a fax number in order to send a letter of intent to sue to Advanced Home Care. From November, 2007 until February, 2008, Ms. Torrence contacted Advanced Home care a total of about 3 times. The first contact was to file a complaint; the 2nd contact was to follow up on the complaint with "Sue" about 2 months later, and the 3rd contact was to inquire about a fax number. In retribution for stating her intentions, Advanced Home Care Representatives, Aram and Sue Appavu, conspired to deprive Ms. Torrence of her right to seek redress and remedies in regards to Advanced Home Care's misconduct and proceeded in "Intimidating" Ms. Torrence, via a letter, stating that if she continued her quest to obtain justice for the misconduct and sexual misconduct of Advanced Home Care, she would face consequences. In conspiring to stand in Ms. Torrence's way to obtain justice and intimidating her via a letter sent on or about March, 2008, Advanced Home Care violated 42 U.S.C. 126, §12203 (a). Ms. Torrence suffered fear, intimidation, fright and distress after she received the letter, containing numerous false allegations from Advanced Home Care, against her.

3. Despite the fact that Advanced Home Care made monthly visits to Ms. Torrence's building, she has met Aram Appavu just one time, and from that one time, in which Ms. Torrence's blood pressure was taken, Advanced Home Care made false statements, which in effect, defamed the character of Ms. Torrence, to wit: (a) accused Ms. Torrence of making harassing phone calls (b) accused Ms. Torrence of Slander c) accused Ms. Torrence of libel (d) accused Ms. Torrence of blackmail (e) accused Ms. Torrence of having a history of bringing false allegations; and (f) accused Ms. Torrence of being an extortionist - all because she had her blood pressure taken and sought assistance for her health and hearing disability. Thus, Advanced Home Care violated 42 U.S.C. 126, §12203 (b) of the Americans with Disability Act of 1990. Advanced Home Care misused and abused their office by making sexual advances towards Ms. Torrence, and by making perjurious false and misleading statements to others against Ms. Torrence. Ms. Torrence suffered fear, intimidation, fright and distress after she received the letter, containing all the false allegations from Advanced Home Care.

4. Ms. Torrence had a right to participate in the service Advanced Home Care has to offer, and it was very convenient for Ms. Torrence to be able to go just 3 floors up, in her own building, to obtain the healthcare she so desperately needs. Ms. Torrence suffers from osteoarthritis of the knees, indicating the program was one that would greatly benefit Ms. Torrence, as it limited the walking she'd have to engage in, to get to a medical professional. In depriving Ms. Torrence of

her right to participate and receive the help that she so badly needs, Advanced Home Care violated Section 504 of the Rehabilitation Act of 1973, which forbids organizations from excluding or denying individuals with disabilities an equal opportunity to receive program benefits and services. Ms. Torrence has a right to participate in, and have access to the healthcare services provided by a "home" healthcare service. Ms. Torrence was intimidated, humiliated, terrified and felt extremely violated, "and dirty" when Advanced Home Care used its role as a medical provider to approach her sexually, when her initial contact with Advanced Home Care was for medical purposes; and was to be used for medical purposes only.

5. Advanced Home Care attempted to obstruct justice in an effort to deprive, delay and conceal the fact that Aram Appavu, using his position as a doctor/RN obtained Ms. Torrence's phone number for medical purposes, and proceeded in using her home phone number to request sexual favors. Further, Ms. Torrence now questions the actions of Aram, not just with her, but with other patients, due to the fact that talking sexually to Ms. Torrence came very "easily" to Aram Appavu, and his being in the position to "touch" the body of those he comes in contact with, severely violated the trust Ms. Torrence had in Advanced Home Care, when he touched her body, and then proceeded in telephoning her, speaking sexually explicit language and requesting sexual favors. Thus, Advanced Home Care violated 42 U.S.C., 1983. Ms. Torrence was intimidated, humiliated, terrified and violated when Advanced Home Care used its role as a medical provider to approach her sexually, when her initial contact with Advanced Home Care was for medical purposes; and was to be used for medical purposes only.

6. Ms. Torrence followed the proper steps in reporting the sexual misconduct of Advanced Home Care, **and it was only after she informed Advanced Home Care of her intentions to sue**, did she receive a letter, defaming her character, threatening action against her, and attempting to stand in the way of Ms. Torrence receiving justice. In meeting Ms. Torrence's complaint with a threatening letter rather than an apology and discipline for the employee, Advanced Home Care violated 42 U.S.C., 1985. "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness to any court in the United States, from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully..." After Ms. Torrence received the threatening letter, on behalf of Advanced Home Care, she felt threatened, intimidated, violated, abused and felt that her life was in jeopardy by Advanced Home Care and its representatives.

### The Parties

7. On information and belief, Defendant Advanced Home Care is a healthcare corporation organized under the laws of the state of Illinois. On information and belief, Advanced Home Care's primary place of business is located in Darien, Illinois.

8. At all relevant times to the actions stated herein, Ms. Torrence has been a residence of the City of Chicago, Cook County, Illinois. Ms. Torrence currently resides in Chicago, Illinois at 618 S. Wabash Avenue, in Chicago, Illinois.

9. Ms. Torrence is hearing impaired, and has been since as early as 1991, when a physician first diagnosed the impairment; and currently receives SSDI as her source of income. Ms. Torrence's hearing impairment constitutes a "handicap" as defined by 42, U.S.C., Chap. 126, § 12102 (1)(a). Ms. Torrence also suffered from depression, a condition which first afflicted her in 1992 following the death of her grandmother and the near death of her brother. Ms. Torrence's depression was first diagnosed by a physician on or about late 1992 or early 1993. Ms. Torrence's depression constitute a "handicap" as defined by the 42 U.S.C., Chap. 126, § 12102 (2). Additionally, Ms. Torrence suffers from osteoarthritis of both knees and carpal tunnel syndrome of her right hand.

### Jurisdiction and Venue

10. This Court has jurisdiction over Ms. Torrence's Claims pursuant to Title III, 42 U.S.C. § 12181, 12182, 12203, 1983 and 1985 because this action presents questions arising from the laws of the United States.

11. The Court has jurisdiction over Ms. Torrence's Intimidation, Emotional Distress, Medical Malpractice, Sexual Misconduct, Defamation and Advanced Nursing Practices Act Claims pursuant to 28 U.S.C. § 1367(a) because these claims are related to the American with Disability Act of 1990 claims and forms part of the same controversy.

### Ms. Torrence's Experience with Advanced Home Care

12. On or about October 2007, an advertisement was placed in both elevators at Ms. Torrence's

residence, located at 618 S. Wabash, Chicago, Illinois, informing the tenants of a monthly "healthcare meeting" to be held by Advanced Home Care, which was scheduled to occur in the 8th floor conference room, on October 17, 2007 for "general nutrition." Lunch was provided to the tenants and Ms. Torrence asked the nurse about the effects of eating sunflower seeds on a regular basis since she reads, while eating sunflower seeds in addition to consuming large quantities of Pepsi. There were 2 RNs and 1 Nurse at the meeting from Advanced Home Care.

13. Plaintiff was informed by the nurse that after the meeting, she could have her blood pressure taken, due to the "salt" associated with sunflower seeds. After the meeting, which lasted approximately 1-1/2 hours, Ms. Torrence had her blood pressure checked by an RN from Advanced Home Care and was told that it was normal, but cannot recall the exact number.

14. On her way out of the conference room, where the meeting was held, Ms. Torrence noticed people waiting to have their blood pressure taken by another RN, who was giving out cards (a record) of the person's blood pressure. Ms. Torrence stood in line and waited to have her blood pressure taken again, in order to have a record of it, for when Advanced Home Care returned the following month. Advanced Home Care came to Ms. Torrence's home on a monthly basis.

15. Ms. Torrence sat down, and "Aram" from Advanced Home Care asked Ms. Torrence her name, age and phone number, stating to Ms. Torrence that he had never seen her at the meetings and informed Ms. Torrence that she looked to be 25 years of age, rather than 47 years of age. Aram jotted Ms. Torrence's name, phone number and blood pressure on a log. Ms. Torrence left after having her blood pressure taken, a second time.

16. Approximately 3-4 hours later, Ms. Torrence's phone rang. It was "Aram" from Advanced Home Care. He informed Ms. Torrence that she was a very beautiful woman and that she "stood out" from the rest of those at the meeting. There were approx. 50 tenants at the meeting; it was standing room only.

17. Ms. Torrence, surprised to be getting a phone call from Advanced Home Care, asked Aram when was Advanced Home Care going to check for "Diabetes" and was told that he would look into it, and get back with her. It was a question and medical question initiated by Ms. Torrence, not Advanced Home Care. She also inquired about devices for her hearing impairment.

18. From October 17, 2007 until about November 1, 2007, Aram telephoned Ms. Torrence, not speaking of "medical issues" but rather, of sexual issues. The calls began at about 8 am and ended at about 8 pm, in which Aram sexually harassed Ms. Torrence over the phone. Aram asked Ms. Torrence about the "type" of panties she wore i.e, bikinis, thongs, etc. He asked Plaintiff if he could take her out to an Indian restaurant. Ms. Torrence stated she wasn't interested, and ended the call.

19. Aram informed Ms. Torrence that "everybody in the building" where she lived, was either mentally ill or was under medication (that he prescribed), stating to Ms. Torrence that she didn't "look like" she belonged in the building since all of the tenants were mentally challenged. Aram even went so far as to provide the names of certain tenants, informing Ms. Torrence what medications they were on. This revelation by Advanced Home Care caused Ms. Torrence to live uncomfortably in her own home, in addition to fear.

20. Aram telephoned Ms. Torrence and asked if he could come to her apartment to perform a "bikini wax" on her. Unaware of what a bikini wax was, Ms. Torrence proceeded in calling a friend to ask what it was and soon learned that it was a "vaginal procedure" something she didn't request, need, nor want.

21. On one hand, Aram was asking Ms. Torrence about her panties, and on the other, he was giving her "vaginal" medical advice. Insulted by Aram's comments, Ms. Torrence stated that she was getting ready to end the call, and Aram stated "do you take many baths?" When Ms. Torrence answered yes, Aram proceeded in "advising" Ms. Torrence to not take many baths because she could develop a "urinary tract infection" because it leaves her "vagina open." Although Ms. Torrence asked Aram about Diabetes and Hearing Devices, his medical conversation with her was related strictly to her "vaginal area." (Bikini Wax, Urinary Tract Infection)

22. On or about October 25th, Ms. Torrence went to Mr. Barlow, a "case manager" where she lives, and informed him of the sexual comments by Aram, and was advised to start making a note of what was said and when the calls occurred. The sexual harassment continued, and only stopped, not after she asked Advanced Home Care to, but after she contacted Advanced Home Care and spoke to Sue and filed a Complaint.

23. Ms. Torrence asked Aram if he were married, and he replied "yes." Ms. Torrence informed Aram that she is a representative of God, **and asked him again**, stating "out of respect for his wife and for him as a healthcare professional, to quit calling her apartment." This was the 3rd time Ms. Torrence asked Aram to stop calling her home. Telephone records of Aram will indicate that most calls placed by Aram were not answered by Ms. Torrence. Aram proceeded in leaving voicemail messages which are currently saved by Ms. Torrence. Ms. Torrence had a right to enjoy and participate in the service provided by Home Health Care, without having the doctor/RN suggest sexual favors. When Aram sexually harassed Ms. Torrence, that act caused Ms. Torrence to be deprived of the fundamental right of having home health service. Ms. Torrence states, if she had known Aram was looking at her, "like that" at the healthcare meeting, she would have never allowed him to "touch her" during the blood pressure check.

24. Approximately 1-2 days after asking Aram to cease calling her home, which he did stop, Aram started calling again and asked if he and Ms. Torrence could simply be friends. Aram stated that he would no longer make sexual advances towards Ms. Torrence, however, on about October 30th, during a discussion about a business proposition regarding a computer, Aram proposed "sex" to Ms. Torrence, after stating he would not do it again.

25. On or about October 31, 2007, Ms. Torrence telephoned Advanced Home Care, located in Darien, Illinois and asked to speak to the director or administrator. Ms. Torrence was told that the administrator was Aram, the person she was calling to complain about. After inquiring if there were other administrators, Ms. Torrence was directed to "Sue."

26. Ms. Torrence informed Sue of the actions of Aram and Sue informed Ms. Torrence that she would check his phone records (since they have backups) and would get back with Ms. Torrence, however, she never contacted Ms. Torrence again. Sue failed to properly conduct the investigation, or turn it over to someone within Advanced Home Care, to investigate Ms. Torrence's complaint "neutrally" that didn't pose a conflict of interest, once she learned that the employee in question, was her husband.

27. Ms. Torrence telephoned Advanced Home Care a second time, to inquire about the status of her complaint, and was told by Aram that "Sue" was his wife. Sue never stated to Ms. Torrence, while taking her complaint, that it was regarding "her husband." The complaint was never acted

upon by Advanced Home Care, even though Ms. Torrence had a right to have her concern looked into, properly.

28. Determined to obtain justice, Ms. Torrence filed complaints with two State Agencies to wit: The Illinois Department of Public Health and the Illinois Department of Financial and Professional Regulation. They concluded that there was no violation because they were "unable to request the phone records of Aram" without a court order. This means, that a complaint for "sexual harassment via telephone" was conducted minus "telephone records."

29. Ms. Torrence contacted both State Agencies and asked, why did they come to the conclusion that they did, and Ms. Torrence was informed that a court of law is the only entity that could order the release of phone records of Advanced Home Care, via a subpoena.

30. In March, 2008, Ms. Torrence received a letter from an attorney, stating he represents Advanced Home Care and the letter was threatening, scary, frightening and intimidating, as it "told" Ms. Torrence to quit exercising her right to obtain justice. The letter referred to Ms. Torrence as an "extortionist, blackmailer, liar" simply because Aram took it upon himself to use Ms. Torrence's phone number, which was given to him for medical purposes, to contact her for sexual purposes.

## COUNT I: ADVANCED HOME CARE'S VIOLATION OF THE AMERICAN WITH DISABILITY ACT OF 1990

(ADVANCED HOME CARE DEPRIVED MS. TORRENCE, as an AMERICAN WITH DISABILITIES, OF HER RIGHT TO FULL AND EQUAL ENJOYMENT OF THE GOODS AND SERVICES, PRIVILEGES AND ADVANTAGES OF "**HOME**" HEALTHCARE)

31. Ms. Torrence repeats and realleges the allegations of paragraphs 1-30 as if fully set forth herein.

32. Ms. Torrence suffers from a hearing impairment, carpal tunnel syndrome, osteoarthritis of the knees, and clinical depression, which are handicaps as defined by the Americans With

Disabilities Act of 1990, 42 U.S.C., Chapter 126, §12102. Ms. Torrence's foregoing medical conditions have created permanent medical limitations for Ms. Torrence and have rendered her substantially limited in one or more major life activities - which is why she so badly needed the services Advanced Home Care offered.

### COUNT II: ADVANCED HOME CARE'S VIOLATION OF THE AMERICAN WITH DISABILITY ACT OF 1990

(ADVANCED HOME CARE DISCRIMINATED AGAINST MS. TORRENCE IN DEPRIVING HER OF THE OPPORTUNITY TO PARTICIPATE AND BENEFIT FROM THE ADVANTAGES OF HOME HEALTH CARE - BY CEASING ALL SERVICES TO HER)

33. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 32, as if fully set forth herein.

34. Advanced Home Care elected to cease home care for Ms. Torrence and deny the incident occurred, instead of offering an apology and disciplining Aram Appavu. Advanced Home Care, came into Ms. Torrence's home, not for medical purposes, but for sexual purposes. There was no reason for Aram Appavu to contact Ms. Torrence. Advanced Home Care brought garbage and sleaze into Ms. Torrence's home, despite the fact that she informed Aram that she is a representative of God, and has a site dedicated to God.

35. As an American with Disabilities, Ms. Torrence had a right to participate and benefit from the service Advanced Home Care offers.

### COUNT III: ADVANCED HOME CARE'S VIOLATION OF THE AMERICAN WITH DISABILITY ACT OF 1990

(28 C.F.R. 36.303 STATES THAT ADVANCED HOME CARE HAD A DUTY TO PROVIDE AN AUXILIARY AID TO MS. TORRENCE, FOR HER DISABILITY: HEARING LOSS)

36. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. Ms. Torrence informed Advanced Home Care of her hearing loss, and inquired about assistance in helping her hear tones and conversations. Aram was to look into devices for Ms. Torrence's hearing loss, however, he opted to sexually harass Ms. Torrence.

38. Ms. Torrence is hearing impaired, and is in dire need of a hearing aid or assistance. Having "home care" provided to her, made it easier for Ms. Torrence to see a physician. Advanced Home Care failed in their duty to provide Ms. Torrence with such a device.

## COUNT IV: INTIMIDATION
(ADVANCED HEALTH CARE SENT A THREATENING AND INTIMIDATING LETTER TO MS. TORRENCE AFTER SHE MADE ADVANCED HOME CARE AWARE OF HER INTENTION TO FILE A LAWSUIT)

39. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 38 as if fully set forth herein.

40. On about February, 2008, Ms. Torrence telephoned Advanced Home Care (her 3rd call since October, 2007) and asked the receptionist for the fax number to Advanced Home Care. She left a message for Administrator, "Sue" letting her know of an impending "Letter of Intent to Sue."

41. A short time later, on or about March, 2008, Ms. Torrence received a letter, which stated, "This correspondence will constitute formal notice of our demand to cease and desist such threatening actions. Your actions may subject you to charges of tortuous conduct of intentional interference with a business relationship, intentional damage to reputation, slander and libel." The letter contained many false statements from Advanced Home Care, painting Ms. Torrence in a negative light, when it is the business, as mentioned in the letter, that Aram used to sexually harass Ms. Torrence.

## COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(ADVANCED HOME CARE'S INTRUSION INTO MS. TORRENCE'S HOME WAS UNRELATED TO MEDICAL PURPOSES AND CAUSED HER EMOTIONAL DISTRESS)

42. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 41 as if fully set forth herein.

43. Advanced Home Care opted to slander, defame, threaten and bear false statements against Ms. Torrence, when a simple apology would have sufficed.

44. Ms. Torrence is 47 years of age, and has filed a lawsuit regarding 1 (one) Controversy, thus does not have a "history" of filing lawsuits, as implied by Advanced Home Care, when Ms. Torrence has met Aram Appavu just one time. Aram Appavu made many negative and false comments against her, just from taking her blood pressure, instead of admitting guilt and moving on.

45. Ms. Torrence has never in her life, been called a blackmailer, an extortionist, or none of the words used in the letter, approved by Advanced Home Care, against her. Ms. Torrence was intimidated by Advanced Home Care, simply because she left her home, went 3 floors up to attend a Health Care Meeting, had her blood pressure taken, was sexually harassed, and reported it.

## COUNT VI: SEXUAL MISCONDUCT
(ADVANCED HOME CARE SEXUALLY HARASSED MS. TORRENCE AFTER TAKING HER HOME PHONE NUMBER FOR MEDICAL PURPOSES)

46. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 45 as if fully set forth herein.

47. From October 17, 2007 through November 1, 2007, Advanced Home Care repeatedly telephoned the home of Ms. Torrence, making sexually explicit comments. In one instance, Aram Appavu asked Ms. Torrence if he could come to her home to perform a "bikini wax" on her. When Ms. Torrence asked him what that was, he never did provide an answer, and it was only after Ms. Torrence asked a friend what a "bikini wax" was, did she learn that it was related to the "vagina." The comment came just seconds after Aram asked Ms. Torrence what "was she wearing."

## COUNT VII: DEFAMATION OF CHARACTER

(ADVANCED HOME CARE MADE FALSE STATEMENTS REGARDING MS. TORRENCE, WHICH DEFAMED HER CHARACTER)

48. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 47 as if fully set forth herein.

49. Advanced Home Care went to another person, and provided false statements to that other person, that has never met Ms. Torrence, and proceeded in calling her names to wit: An Extortionist; A Blackmailer; A Liar; A person of low character, when it was Aram Appavu who reached over into Ms. Torrence's home, with "garbage" in regards to sexual issues. It's pretty clear that the person "believed the false statements" otherwise, the letter would not have been sent to Ms. Torrence.

50. Advanced Home Care opted to paint Ms. Torrence in a very bad and unfavorable light vs. saying what really happened, which was Aram using his position as a medical provider, to try to solicit sex from Ms. Torrence.

51. Advanced Home Care took the blood pressure of Ms. Torrence, twice, on October 17th, 2007, once at a previous meeting, and the issue of diabetes testing and hearing devices were being looked into - which in effect, made Ms. Torrence a patient of Advanced Home Care.

## COUNT VIII: VIOLATION OF UNDER COLOR OF LAW - 42 U.S.C. 1983

(ADVANCED HOME CARE USED THEIR POSITION AS MEDICAL CARE PROVIDERS, TO SEXUALLY HARASS MS. TORRENCE, AFTER OBTAINING HER PHONE NUMBER FOR MEDICAL PURPOSES)

52. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 51 as if fully set forth herein.

53. Title 42. Section 1983 of the U.S. Code provides a remedy in which Ms. Torrence can pursue, in Federal Court, because, at the hands of Advanced Home Care, her Constitutional

Rights were violated. Advanced Health Care is registered with the Illinois Department of Public Health and the Illinois Department of Professional and Financial Regulation, thus, are bound by the rules, laws and procedures governing these offices. Acting under Color of Law, Advanced Home Care obtained Ms. Torrence's phone number, recording it on a log "for Blood Pressures" and proceeded in using Ms. Torrence's personal phone number to sexually harass her. After Ms. Torrence complained about the sexual harassment, Advanced Home Care, using their role as physicians, enlisted the aid of another individual, to intimidate and threaten Ms. Torrence, to discourage her from filing a lawsuit.

54. This intrusion into Ms. Torrence's home, by a health care provider, has caused Ms. Torrence emotional distress, pain and suffering, distrust of medical personnel, fear and fright, due to the manner in which Advanced Home Care sought to handle the complaint of Ms. Torrence. And although Ms. Torrence gave her Complaint to an Administrator at Advanced Home Care, "Sue," she never called Ms. Torrence back, after saying she would do so; and she never informed Ms. Torrence, when speaking to her, that the employee she was complaining about, was her husband.

### COUNT IX - MEDICAL MALPRACTICE - 225 ILCS 60/1, 60/22 (5)

(ADVANCED HOME CARE STRAYED AWAY FROM PROFESSIONALISM WHEN APPROACHING MS. TORRENCE ON A SEXUAL LEVEL)

55. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 54 as if fully set forth herein.

56. Advanced Home Care, doing business as health professionals, are in the position to come in contact with a person's "body." It is disturbing to Ms. Torrence, that her person was touched by Aram Appavu, only to have him call her hours later, for reasons not related to medical purposes.

57. Advanced Home Care engaged in unethical and unprofessional conduct of a character, that deceived Ms. Torrence into allowing Aram to have "physical contact" with her, in taking her blood pressure, only to be sexually harassed just a short time later.

## COUNT X - VIOLATION OF THE NURSING AND ADVANCED PRACTICE NURSING ACT - TITLE 68, PART 1300.65 (a)(2)(4)

(ADVANCED HOME CARE ENGAGED IN SEXUAL MISCONDUCT WITH MS. TORRENCE, AND CONDUCT THAT WAS REASONABLY CAN AND WILL BE INTERPRETED BY MS. TORRENCE AS SEXUAL)

58. Ms. Torrence repeats and realleges the allegations of paragraphs 1 through 57 as if fully set forth herein.

59. Advanced Home Care used Ms. Torrence's phone number for reasons other than what was intended, by participating in verbal behavior that was seductive and sexually demeaning to Ms. Torrence.

60. Advanced Home Care departed from and failed to conform to the standards of professional and practical nursing as set forth in Part 1300 of the Nursing and Advanced Practice Nursing Act.

61. Ms. Torrence remains concerned over Advanced Home Care's practices, as she states that Aram Appavu approached her as "business as usual," indicating it's something he is comfortable doing - sexually approaching his patients/clients.

62. Ms. Torrence is prepared to show the court that she has met her prima facie case to wit: Witnesses of Aram Appavu's phone calls, saved voicemail messages, the blood pressure card from October 17, 2007, witness statements regarding the incident, the intimidating letter, phone records of incoming calls to Ms. Torrence, to show many many calls made to Ms. Torrence, after meeting Aram Appavu just once.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wanda Torrence respectfully requests that the Court enter judgment in her favor and against Defendants Advanced Home Care, as follows:

(i)  Awarding Ms. Torrence damages for denying her the opportunity to participate in their program she so badly needed;

(ii)  Awarding Ms. Torrence damages for emotional distress, for resorting in intimidation and

false statements against her;

(iii) Awarding Ms. Torrence damages for Advanced Home Care straying beyond their standard of care, in regards to their nature of business, which is health care;

(iv) Awarding Ms. Torrence damages for the numerous calls Aram Appavu (Advanced Home Care) made to Ms. Torrence over the course of 3 weeks. (Approx. 100 phone calls and about 30 Voicemail Messages);

(v) Awarding Ms. Torrence damages for Advanced Home Care betraying the trust of Ms. Torrence, when she trusted them as health care professionals to deal with her, based only on health situations;

(vi) Awarding Ms. Torrence punitive damages;

(vii) Awarding Ms. Torrence damages for Sexual Misconduct in regards to the Medical Malpractice Act and the Nursing and Advanced Practice Nursing Act;

(viii) Awarding Ms. Torrence her attorney's fees and costs in pursuing this action; and

(ix) Awarding Ms. Torrence such other and further damages and relief as the Court deems just and proper.

Ms. Torrence hereby demands trial by jury of all issues so triable.

Respectfully submitted,

WANDA TORRENCE

*Wanda Torrence*

Plaintiff

**WANDA TORRENCE**
**PRO SE**
**618 S. Wabash, Apt. 510**
**Chicago, Illinois 60605**

(312) 922-2509