# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WANDA TORRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 08-cv-2821 |
| | ) |
| ADVANCED HOME CARE, INC., | ) Judge Robert M. Dow, Jr. |
| ARAM APPAVU, and | ) |
| SUGANTHI APPAVU, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wanda Torrence ("Torrence"), filed a *pro se* complaint [1] on May 15, 2008, against Advanced Home Care, Inc. ("Advanced Home Care"), Aram Appavu ("Aram"), and Sue Appavu (collectively "Defendants"). Subsequently, Plaintiff amended her complaint [18] on November 10, 2008, replacing Sue Appavu with Suganthi Appavu, and asserting additional claims against Defendants. Currently before the Court is Defendants' motion to dismiss [22] Plaintiff's first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons stated below, Defendants' motion to dismiss is granted.

## I.     Background[2]

Torrence suffers from hearing loss, carpal tunnel syndrome, osteoarthritis, and clinical depression. Advanced Home Care is a healthcare corporation owned by Aram and Suganthi

---

[1] Plaintiff raises a procedural objection to Defendants' motion to dismiss in her response brief [30], arguing that the Court should not consider Defendants' motion to dismiss because it was filed nine days after the December 10, 2008 deadline initially set by the Court. The Court addressed and overruled this objection at the January 8, 2009 status hearing.

[2] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the first amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Appavu. Advanced Home Care conducted monthly healthcare meetings in the building in which Torrence resides. On or about October 17, 2007, Torrence attended a healthcare meeting in her building conducted by Advanced Home Care. During the meeting, Torrence had her blood pressure taken by Aram. At that time, Aram recorded Torrence's name, phone number, and blood pressure in a log.

Torrence alleges that between October 17, 2007 and November 1, 2007, Aram placed approximately 100 telephone calls to Torrence, and left approximately 50 messages on her voicemail. According to Torrence, Aram made sexual advances toward Torrence during the calls, which Torrence rebuffed. Torrence asked Aram to stop calling her house, but the calls continued. On or about October 31, 2007, Torrence telephoned Advanced Home Care and complained about Aram's harassing phone calls to a woman who identified herself as "Sue." Torrence later learned that the woman with whom she lodged her complaint was Aram's wife, Suganthi Appavu. Following Torrence's complaint, Advanced Home Care stopped conducting healthcare meetings at Torrence's residence.

Torrence then reported Aram's sexual harassment to the Illinois Department of Financial and Professional Regulation and the Illinois Department of Health. Neither agency found any violation or carried out any disciplinary action against Advanced Home Care or Aram.

On March 12, 2008, an attorney for Advanced Home Care sent a letter to Torrence, stating that he understood that she had placed harassing phone calls to the Appavus and had made false allegations about Advanced Home Care to various state and federal agencies. The letter also suggested that Torrence was attempting to blackmail Defendants, and that she had a history of making false accusations. In the March 12th letter, the attorney requested that

2

Torrence stop making complaints against Advanced Home Care, and stated that if she did not, Advanced Home Care would take legal action against her.

Counts I, II, III, and XIII of Plaintiff's first amended complaint assert claims under the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*). Count XII alleges a violation of the Rehabilitation Act (29 U.S.C. § 791 *et seq.*). Count VIII seeks recovery pursuant to section 1983 (42 U.S.C. § 1983). Count XI alleges a breach of fiduciary duty in violation of section 404 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1104). Counts IV, V, VI, VII, IX, and X allege various Illinois state common law and statutory claims.

## II.    Legal Standard On Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).[3] To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief

---

[3] In her response brief [30], Plaintiff makes the novel argument that decisions issued by courts of appeals are not in accordance with the principle of *stare decisis*, and therefore have neither binding nor persuasive authority on this Court. "[T]he principle of *stare decisis* * * * demands adherence to precedents * * * [meaning] previous authoritative decisions in similar cases emanating from one's own circuit and from the Supreme Court." *U.S. ex rel. Shore v. O'Leary*, 833 F.2d 663, 667 (7th Cir. 1987). Therefore, the principle of *stare decisis* requires this Court to follow the decisions of the Court of Appeals for the Seventh Circuit (and the Supreme Court), not disregard them as Plaintiff claims. See *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("district judges must follow the decisions of [the Seventh Circuit] whether or not they agree"). While the decisions of courts of appeals in other circuits are not binding on this Court, they may be persuasive. See *Varitalk, LLC v. Lahoti*, 2007 WL 1805086, at *3 (N.D.Ill. June 19, 2007); *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir. 1987). Therefore, the Court adheres to Seventh Circuit and Supreme Court precedent in this opinion.

above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). While "[a] *pro se* complaint is held to 'less stringent standards than formal pleadings drafted by lawyers,' … a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint." *Henderson v. Sheahan*, 196 F.3d 839, 845-46 (7th Cir. 1999) (citation omitted). In ruling on a motion to dismiss, the Court may consider the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

**III. Analysis**

    **A. Plaintiff's Americans with Disabilities Act Claims (Counts I, II, III, and XIII)**

Counts I, II, III, and XIII of Plaintiff's first amended complaint assert claims under the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*) ("ADA"). The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004).

4

### 1. Count I

In Count I, Plaintiff alleges a deprivation of her "right to full and equal enjoyment of goods and services, privileges, and advantages of home healthcare." Count I appears to be based on Title III of the ADA, which provides that

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To state a claim under Title III, Plaintiff must allege that: (1) she is disabled; (2) Defendant is a "private entity" which owns, leases or operates a "place of public accommodation"; and (3) she was denied the opportunity to participate in or benefit from services or accommodations on the basis of her disability. See *Ganden v. Nat'l Collegiate Athletic Ass'n*, 1996 WL 680000, at *7 (N.D. Ill. Nov. 21, 1996).

Defendants argue that Count I fails because Plaintiff does not adequately allege the third element – that she was discriminated against on the basis of her disability. The language "[o]n the basis of means there must be a 'causal link' between the challenged action and the disability." *Id.* at *13; see also *Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006) ("the 'on the basis of' language requires the plaintiff to show that, 'but for' his disability, he would have been able to access the services or benefits desired").

Plaintiff does not allege that Defendants' decision to stop conducting healthcare meetings at her place of residence was caused by her hearing loss, carpal tunnel syndrome, osteoarthritis, clinical depression, or any other disability.[4] Instead, Plaintiff alleges that Defendants stopped providing her with healthcare services because she complained about Aram's alleged sexual harassment. See Amend. Cmplt. at ¶ 1 ("because Ms. Torrence reported the sexual misconduct

---

[4] The Court expresses no opinion as to whether these conditions constitute disabilities under the ADA.

of Defendants, Advanced Home Care ceased providing healthcare services to Ms. Torrence"); ¶ 49 (alleging that after Plaintiff complained, Suganthi Appavu informed her that "they would not be back"). Therefore, Plaintiff has not only failed to make the requisite allegations to state a claim under Title III, but has pleaded herself out of court on Count I. See *Benders v. Bellows and Bellows*, 515 F.3d 757, 767 (7th Cir. 2008) (citations omitted) (*pro se* plaintiff pleads herself out of court by alleging facts that show she is not entitled to a judgment).

   2. **Count II**

In Count II, Plaintiff alleges that Defendants discriminated against her in violation of the ADA by depriving her of the "opportunity to participate and benefit from the advantages of home health care." Count II appears to be based on Title II of the ADA, which provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity.

42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must allege that: "(1) she is disabled as defined under the [ADA]; (2) she is qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) [Defendant] is a public entity." *Yates v. John Marshall Law School*, 2008 WL 4358313, at *4 (N.D. Ill. Sept. 22, 2008).

As with Count I, Plaintiff has pleaded herself out of court on Count II by alleging that Defendants did not deny her the benefit at issue – home healthcare – because of her disabilities, but rather because of her complaints about Aram. See Amend. Cmplt. at ¶¶ 1, 49, 55 (alleging that "Defendants elected to cease homecare for Ms. Torrence and deny the incidents occurred, rather than offering an apology, disciplining Aram Appavu, and sending someone other than Aram Appavu to Ms. Torrence's building (for future monthly healthcare visits)"); *Glick v. Walker*, 2008 WL 896205, at *5 (7th Cir. April 2, 2008) (affirming dismissal of ADA Title II

claim on the ground that plaintiff pleaded himself out of court by alleging that he was denied benefit for a reason other than his disability).

Count II also fails because Plaintiff does not allege that any of the Defendants is a public entity within the meaning of the ADA. "[I]t is incumbent on [the Court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996). Therefore, the Court will consider whether Plaintiff *could* allege that one of the Defendants is a public entity. It appears that any such allegation would be baseless.

The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). Plainly, the individual defendants are not public entities. See *Brewer v. Wisconsin Bd. of Bar Examiners*, 270 Fed. Appx. 418, 421 (7th Cir. 2008) (unpublished) ("ADA claims against individual defendants in their individual capacity must fail because the Act authorizes suits only against public entities"). And Advanced Home Care is a corporation (Amend. Cmplt. at ¶ 23), not a State or local government, an instrumentality of a State or local government, or the National Railroad Passenger Corporation. Therefore, Count II also fails for the independent reason that none of the Defendants is a public entity, as required to establish liability under Title II of the ADA.

### 3. Count III

In Count III, Plaintiff alleges that Defendants violated a duty to provide her with an auxiliary aid pursuant to 28 C.F.R. 36.303. Title III of the ADA defines discrimination to include a public accommodation's

7

> failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(iii). The Department of Justice promulgated 28 C.F.R. 36.303 to implement the auxiliary aid requirement set forth in Section 12182(b)(2)(A)(iii). The regulation requires a public accommodation to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities," 28 C.F.R. 36.303(c), and provides examples of various auxiliary aids and services that can be furnished to accommodate individuals with hearing impairments, 28 C.F.R. 36.303(b)(1).

In Count III, Plaintiff alleges that Defendants failed to furnish her with a device to accommodate her hearing loss. Count III also contains an allegation that Defendants never addressed her concerns that she may have diabetes. Count III fails because Plaintiff does not allege that she was "excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. 36.303(a). For example, Plaintiff does not allege that she could not participate in the monthly healthcare meetings (and was thereby denied a service) because of her hearing loss, diabetes, or some other disability for which the Defendants could have provided an auxiliary aid. The regulation does not require a public accommodation to provide any person suffering from hearing loss with a hearing aid upon request, as Plaintiff contends.

Defendants argue that Count III also fails because Plaintiff's apartment building is not a "place of public accommodation" under the ADA. Plaintiff does not allege that her apartment building is a place of public accommodation; indeed, Plaintiff's amended complaint contains no allegations regarding a place of public accommodation. To the extent that Count III is premised

on the notion that the residence is a place of public accommodation, the legislative history of the ADA indicates that residential apartment buildings are not places of public accommodation. H.R.Rep. No. 101-485(II), at 100 (1990) ("Only nonresidential facilities are covered by this title"). Moreover, a number of federal district courts have held that residential apartment buildings are not "public accommodations" within the meaning of the ADA. See *Radivojevic v. Granville Terrace Mut. Ownership Trust*, 2001 WL 123796, at *3 (N.D. Ill. Jan. 31, 2001) (cooperative apartment not public accommodation); *Lancaster v. Phillips Investments, LLC,* 482 F.Supp.2d 1362 (M.D. Ala. 2007) (apartment building not public accommodation); *Phibbs v. American Property Management,* 2008 WL 746977, *3 (D. Utah Mar.19, 2008) (residential apartment complex not place of public accommodation); *Mabson v. Assoc. of Apartment Owners of Maui,* 2007 WL 2363349 (D. Hawai'i Aug.13, 2007) (residential condominium not place of public accommodation); *Indep. Housing Servs. of San Francisco v. Fillmore Ctr. Assocs.,* 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (apartments and condominiums not public accommodations); *Reid v. Zackenbaum,* 2005 WL 1993394, *4 (E.D.N.Y. Aug. 17, 2005) (residential facility not public accommodation).

### 4. Count XIII

Count XIII alleges that Defendants retaliated against Plaintiff for complaining about Aram's sexual advances in violation of Section 12203 of the ADA. Section 12203 provides

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

As an initial matter, Defendants' argument that retaliation claims under the ADA are not cognizable outside the employment context is not well-taken. In fact, the statutory structure and

9

text refute Defendants' interpretation. Section 12203 does not appear in Title I, which covers employment, but in Title IV. Moreover, Section 12203(c), which addresses the remedies available for violations of the ADA anti-retaliation provisions, provides that

> [t]he remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203(c). It would make no sense for the remedies available under Title II (Section 12133) and Title III (Section 12188) to be available for violations of the anti-retaliation provisions if the ADA did not recognize retaliation claims in the context of Titles II and III.

Furthermore, while the Seventh Circuit has not addressed a case of retaliation outside the employment context, courts in other circuits have recognized such claims. See *Popovich v. Cuyahoga County Ct. of Common Pleas,* 276 F.3d 808, 816 (6th Cir. 2002) (en banc) (alleged "retaliation by the state domestic relations court against plaintiff for requesting hearing assistance and then filing an administrative complaint with the [DOJ]"); *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1025 (8th Cir.1999) (medical school allegedly retaliated against medical student by giving him a failing grade and expelling him after he filed a grievance); *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138 (2d Cir. 2002) (refusing to dismiss retaliation claim based on allegations that board of education retaliated against student for requesting reasonable accommodation of her disability by, *inter alia*, threatening to file child abuse charges against student's mother and refusing to promote student to the next grade level); *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1181 n.31 (11th Cir. 2003) (expressly rejecting argument that the ADA does not recognize retaliation claims in the public services and public accommodations contexts). Therefore, Plaintiff's retaliation claim is cognizable despite the fact that it is not based on an alleged adverse employment action.

Nevertheless, Plaintiff's retaliation claim is subject to dismissal. In the Seventh Circuit, a plaintiff can prevail on a retaliation claim by presenting direct or indirect evidence. *Burks v. Wisconsin Dept. of Transp.,* 464 F.3d 744, 758 (7th Cir. 2006). Under either approach, a plaintiff must present evidence that she engaged in statutorily protected activity. *Id.* at 758-59. Here, Plaintiff alleges two instances of retaliation. First, she alleges that Defendants ceased providing her with healthcare services in retaliation for her lodging a complaint with Suganathi Appavu about Aram's allegedly sexually harassing phone calls. Amend. Cmplt. at ¶ 117. Second, Plaintiff alleges that Defendants went to an attorney who sent her a threatening letter in retaliation for her filing complaints with the Illinois Department of Financial and Professional Regulation and the Illinois Department of Health about Aram's alleged sexual harassment. Amend. Cmplt. at ¶ 118. In both cases, Plaintiff claims that she was retaliated against for reporting Aram's alleged sexual harassment. But the reporting of sexual harassment is not a statutorily protected activity under the ADA (which has nothing to do with sexual harassment), and thus Count XIII fails.

### B. Plaintiff's Rehabilitation Act Claim (Count XII)

Section 504 of the Rehabilitation Act prohibits a recipient of federal funds from discriminating against an otherwise qualified handicapped individual solely because of that disability. *Grzan v. Charter Hosp. of Northwest Indiana*, 104 F.3d 116, 119 (7th Cir. 1997). Section 504 provides, in relevant part, that:

> [n]o otherwise qualified handicapped individual in the United States, * * * shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *.

29 U.S.C. § 794(a). To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege that "'(1) that [she] is a 'handicapped individual' under the Act, (2) that [she] is 'otherwise

qualified' for the [benefit] sought, (3) that [she] was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance.'" *Grzan*, 104 F.3d at 119. As Defendants correctly note, Plaintiff does not allege that she was discriminated against solely by reason of her handicap. Rather, she claims that Defendants stopped providing her with healthcare "Because She Reported the Misconduct of Aram Appavu." Amend. Cmplt. at Count XII. Because Plaintiff alleges that Defendants excluded her from participating in the home healthcare program on account of a reason other than her handicap, she has pleaded herself out of court on Count XII. See *Benders*, 515 F.3d at 767.

### C. Plaintiff's Section 1983 Claim (Count VIII)

Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994)). "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Id*. To state a claim under section 1983, a plaintiff must show (1) that she was deprived of a right secured by the Constitution or federal law, (2) by a person acting under color of law. See *Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

In Count VIII, Plaintiff does not identify any constitutional or federal right of which she has been deprived. Elsewhere in the complaint, Plaintiff alleges that she was deprived of rights secured under the ADA and the Rehabilitation Act. In light of its "special responsibility to construe *pro se* complaints liberally," *Donald*, 95 F.3d at 555, the Court will read Plaintiff's Section 1983 claim as alleging a deprivation of the rights secured by those federal laws.

It is unclear whether a Section 1983 claim based on violations of the ADA and the Rehabilitation Act is cognizable. Section 1983 may not be used to enforce a federal statutory violation "if Congress has foreclosed such enforcement of the statute in the enactment itself," for example, by "providing a comprehensive enforcement mechanism" in the statute. *Silk v. City of Chicago*, 1996 WL 312074, at *19 (N.D. Ill. Jun. 7, 1996) (citations omitted); see also *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.,* 453 U.S. 1 (1981); *Doe on Behalf of Doe v. Koger*, 710 F.2d 1209, 1212 (7th Cir. 1983). Neither the Seventh Circuit nor the Supreme Court has addressed whether Section 1983 may be used to enforce rights protected by the ADA and/or the Rehabilitation Act. However, a number of district courts in this circuit have held that Section 1983 claims may not rest on the ADA or the Rehabilitation Act. See *Silk*, 1996 WL 312074, at *19 ("this court concludes that the comprehensive enforcement schemes adopted by Congress in the ADA and the Rehabilitation Act of 1973 preclude [plaintiff] from seeking to enforce a violation of either statute through 42 U.S.C. section 1983"); *Holmes v. City of Chicago,* 1995 WL 270231, at *5 (N.D. Ill. May 5, 1995) (holding that "Congress did to intend to permit § 1983 claims based upon alleged injuries remediable under § 504 of the Rehabilitation Act and Title I of the ADA"); *Krocka v. Bransfield*, 69 F. Supp. 2d 1073, 1090 (N.D. Ill. 1997) (holding that claims brought to enforce rights protected by the ADA may not be brought under section 1983); *Alex R. v. Forrestville Valley Community Unit School Dist. No. 221*, 2003 WL 22764877, at *3 (N.D. Ill. Nov. 19, 2003) (dismissing section 1983 claims based on statutory violations of the ADA and the Rehabilitation Act). But see *River Forest School Dist. No. 90 v. Illinois State Bd. of Educ.*, 1996 WL 89055 (N.D. Ill. Feb. 28, 1996) (holding that section 1983 claim can be based on Rehabilitation Act violation).

The Court need not decide whether a Section 1983 claim based on violations of the ADA or the Rehabilitation Act is cognizable because Count VIII fails for an independent reason – Plaintiff fails to adequately allege state action. "In general terms, before a private party's conduct can be considered state action, there must be a sufficiently close nexus between the state and the private conduct so that the action 'may be fairly treated as that of the State itself.'" *Wade v. Byles*, 83 F.3d 902, 904 (7th Cir. 1996) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1104 (1982)). Here, Plaintiff baldly alleges that Defendants acted under color of state law, but sets forth no factual allegations to support that legal conclusion. Amend. Cmplt. at ¶ 80. Such "conclusory allegations that [Defendants were] acting under color of law * * * do not suffice to satisfy [Plaintiff's] pleading requirements" under Section 1983. *Flanagan v. Methodist Hospital of Chicago*, 1996 WL 374131, at * 2 (N.D. Ill. June 28, 1996). Because Plaintiff's complaint "consists of conclusory allegations unsupported by factual assertions[, it] fails even the liberal standard of Rule 12(b)(6)." *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); see also *Gardner v. City of Waukegan*, 1999 WL 410009, at *3 (N.D. Ill. June 4, 1999) (holding that complaint lacked allegations necessary to show defendants acted under color of state law where plaintiff baldly alleged that private actor defendants willfully participated in joint activity with municipal defendants). While the Court is mindful that "complaints written by pro se litigants are examined under a less arduous standard," it is equally true that a *pro se* plaintiff's "unsupported conclusions of fact and conclusions of law will not defeat an otherwise meritorious motion to dismiss." *Young v. Breeding*, 929 F. Supp. 1103, 1106 (N.D. Ill. 1996).

In a later count, Plaintiff alleges that Defendants are recipients of federal and/or state funds. Amend. Cmplt. at ¶ 115. Even assuming Advanced Home Care is a recipient of federal funds, that allegation is insufficient to support the conclusory allegation that it acted under color

14

of law. See *Turner v. Jackson Park Hosp.*, 264 Fed. Appx. 527, 529 (7th Cir. 2008) (unpublished) ("The receipt of federal funds alone is not sufficient to establish state action."). For these reasons, Count VIII must be dismissed.

### D. Plaintiff's ERISA Claim (Count XI)

In Count XI, Plaintiff asserts a breach of fiduciary duty claim and cites to 29 U.S.C. 18, 1104. It appears that Plaintiff is asserting a claim under Section 404 of the Employee Retirement Income Security Act of 1974 ("ERISA").[5] See 29 U.S.C. § 1104. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137, (1990) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90 (1983)). To state a breach of fiduciary duty claim under section 404, a plaintiff must allege: "(1) that the defendants are [employee benefit or pension] plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006). There is no allegation that Plaintiff's case in any way involves an employee pension plan, let alone that the defendants are fiduciaries of such a plan. Therefore, Count XI plainly fails.[6]

### E. Plaintiff's State Law Claims

Because the Court has concluded that all claims over which the Court has original jurisdiction (see 28 U.S.C. § 1367(c)(3)) should be dismissed, the Court must address whether to retain jurisdiction over Plaintiff's state law claims. As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without

---

[5] The proper citation to ERISA is 29 U.S.C. § 1104. The misplaced '18' in Plaintiff's amended complaint likely references the fact that ERISA appears at Chapter 18 of Title 29 of the Code.

[6] To the extent that Plaintiff seeks to assert a common law breach of fiduciary duty claim, and not a claim under ERISA, the Court declines to exercise supplemental jurisdiction over that state law claim as discussed in Part E.

prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification to depart from that "usual practice" in this case, the Court dismisses the state law claims asserted in Counts IV, V, VI, VII, IX, and X of Plaintiff's first amended complaint *without prejudice* to Plaintiff's right to refile them in state court. See *Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002); *Sneed v. Rybicki*, 146 F.3d 478, 482 (7th Cir. 1998).

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss [22].

Dated: May 21, 2009

Robert M. Dow, Jr.
United States District Judge